| | |
|---|---|
| CHERRY HILL CONSTRUCTION, INC.<br>8211 Washington Boulevard<br>Jessup, Maryland, 20794-0356,<br><br>       Plaintiff,<br><br>       v.<br><br>GRUNLEY-WALSH JOINT VENTURE, LLC<br>5010 Nicholson Lane, Suite 200<br>Rockville, MD 20852<br><br>       Defendant<br><br>Serve on Resident Agent:<br><br>Herman M. Braude<br>6006 Neilwood Drive<br>Rockville, Maryland 20850<br><br>And<br><br>ST. PAUL FIRE AND MARINE INSURANCE<br>COMPANY<br>380 Jackson Street, No. 700<br>St. Paul, Minnesota 55101<br><br>       Defendant<br><br>Serve on:<br><br>Ralph S. Tyler, Esq.,<br>Maryland Insurance Administration<br>525 St. Paul Place<br>Baltimore, MD 21202 – 2272<br><br>And<br><br>THE CONTINENTAL INSURANCE COMPANY<br>CNA Plaza<br>333 S. Wabash<br>Chicago, Illinois  60685<br><br>       Defendant | IN THE<br><br>CIRCUIT COURT<br><br>FOR<br><br>MONTGOMERY COUNTY<br><br>Civil Case No. _____  AW 07 CV 3476 |

<u>Serve On:</u>

Ralph S. Tyler, Esq.,
Maryland Insurance Administration
525 St. Paul Place
Baltimore, MD 21202 - 2272

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT

Cherry Hill Construction, Inc. ("Cherry Hill"), by and through its undersigned counsel, hereby files this Complaint against Grunley-Walsh Joint Venture LLC ("Grunley"), St. Paul Fire and Marine Insurance Company ("St. Paul"), and The Continental Insurance Company ("CNA"), and as grounds therefore states as follows:

### I.     The Parties

1.     Plaintiff Cherry Hill is a construction company organized and existing under the laws of the State of Maryland, with its principal place of business at 8211 Washington Boulevard, Jessup, Maryland, 20794-0356.

2.     Defendant Grunley is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 5010 Nicholson Lane, Suite 200, Rockville, Maryland, 20852.

3.     Defendant St. Paul is a surety company organized and existing under the laws of the State of Minnesota, with its principal place of business at 380 Jackson Street, No. 700, St. Paul, Minnesota, 55101.

4.     . Defendant CNA is a surety company organized and existing under the laws of the State of Illinois, with its principal place of business at 333 S. Wabash, Chicago, Illinois, 60685.

### III.   Facts

5.   On or about December 5, 2003, Grunley entered into a Contract with the National Capitol Parks – Central, Contract No. 1443C3059980901 –Task Order No. 35 – Mobilization Phase. The name of the project was Washington Monument Design and Construction (the "Project"), and the location of the project was Washington Monument, Washington, DC (the "Contract").

6.   The obligation of Grunley to pay for labor, material or both furnished for use in the performance of the Contract was covered by Payment Bond No. No. 400SU1001/929310622, issued by St. Paul and CNA, in the penal sum of $13,993,216.00 (the "Bond"). A copy of the Bond is attached hereto as Exhibit A.

7.   On or about March 4, 20054, Cherry Hill entered into a Subcontract Agreement with Grunley to perform "site work/site survey/concrete/Bollards/Add Alternate List" for a subcontract sum of $6,054,859.00 (the "Subcontract"). A copy of the Subcontract is attached hereto as Exhibit B.

8.   During the course of the project, Grunley issued the following six change orders to Cherry Hill:

| | |
|---|---|
| Change Order 001 | Administrative error; zero value |
| Change Order 002 | Various construction items: ($193,532.00) |
| Change Order 003 | Various modifications: $185,041.00 |
| Change Order 004 | Administrative error; zero value |
| Change Order 005 | Various site conditions: $139,860.00 |
| Change Order 006 | Various site conditions: $249,616.00 |

The sum total of the change orders issued to Cherry Hill is $380,985.00. A copy of change order numbers 2, 3, 5 and 6 is attached hereto as Exhibit C.

9.      Also during the course of the project Cherry Hill performed numerous items of changed work as directed by Grunley. The value of the directed change orders is $1,219,257. A spreadsheet listing the directed changes is attached hereto as Exhibit D.

10.     In the aggregate, the six change orders issued by Grunley, and the directed change orders performed by Cherry Hill, increased the contract value by $1,600,242, to a sum total of $7,655,101.

11.     Cherry Hill completed Contract work at the Project in December 2006. All of the work performed by Cherry Hill has been accepted and approved by Grunley.

12.     To date, Grunley has remitted payments to Cherry Hill in the total amount of $6,304,003. Deducting that amount from the contract value of $7,655,101 results in an outstanding balance due and owing to Cherry Hill of $1,351,098.

13.     Cherry Hill has made repeated requests to Grunley for payment of its remaining Contract amount. Despite these requests, and in breach of its obligations under the Subcontract, Grunley has to date failed and refused to remit the outstanding balance to Cherry Hill.

14.     By letter to St. Paul, CNA and Grunley dated September 21, 2007, Cherry Hill demanded that the sureties and the contractor remit payment of the amount due and owing from Grunley of $1,351,098. A copy of the letter is attached hereto as Exhibit E. Despite this request, and in breach of the obligations of St. Paul and CNA under the Bond, and in breach of the obligations of Grunley under the Subcontract, the outstanding balance has not been remitted to Cherry Hill.

## Count I
### (Breach of Express Contract)

15.    Cherry Hill incorporates by reference, and realleges, paragraphs 1 through 15 above.

16.    The Subcontract between Cherry Hill and Grunley obligated Grunley to pay Cherry Hill in a timely manner for work performed by Cherry Hill under the Subcontract and/or at the direction of Grunley.

17.    Grunley materially breached the Subcontract by failing to timely and fully pay Cherry Hill for changed work faithfully performed by Cherry Hill pursuant to the Subcontract and/or at the direction of Grunley.

18.    As a direct and proximate result of Grunley's breach, Cherry Hill has been damaged in the amount of $1,351,098, plus interest.

WHEREFORE, Cherry Hill respectfully requests judgment against Grunley in the amount of $1,351,098, plus interest.

## Count II
### (Breach of Implied in Fact Contract – Quantum Meruit)

19.    Cherry Hill incorporates by reference, and realleges, paragraphs 1 through 18 above.

20.    At the request and direction of Grunley, Cherry Hill rendered and provided valuable labor, material and related construction services to Grunley on the Project, with the intention of payment from Grunley for such labor, materials and services.

21.    Grunley accepted the labor, material and services that Cherry Hill provided to Grunley on the Project, and received the benefit of such labor, material and services.

22.     All labor, material and services rendered and provided by Cherry Hill to Grunley were rendered and provided under such circumstances that Grunley knew or should have known that Cherry Hill expected to be paid for such labor, material and services.

23.     Cherry Hill is entitled to recover the value, quantum meruit, of the labor, material and services it rendered and provided to Grunley for which it has not been paid, in the amount of $1,351,098, plus interest.

WHEREFORE, Cherry Hill respectfully requests judgment against Grunley in the amount of $1,351,098, plus interest.

### Count III
### (Breach of Quasi-Contract – Unjust Enrichment)

24.     Cherry Hill incorporates by reference, and realleges, paragraphs 1 through 23 above.

25.     At the request and direction of Grunley, Cherry Hill rendered and provided valuable labor, material and related construction services to Grunley on the Project, with the intention of payment from Grunley for such labor, materials and services.

26.     Grunley accepted the labor, material and services that Cherry Hill provided to Grunley on the Project, and received the benefit of such labor, material and services.

27.     All labor, material and services rendered and provided by Cherry Hill to Grunley were rendered and provided under such circumstances that Grunley knew or should have known that Cherry Hill expected to be paid for such labor, material and services.

28.     Under the circumstances, it is inequitable for Grunley to retain the benefit of the labor, material and services provided by Cherry Hill without the payment of the value of said labor, material and services to Cherry Hill.

29.    The value of the labor, material and services furnished by Cherry Hill to Grunley, and for which Cherry Hill has to date not been paid, is $1,351,098, plus interest.

WHEREFORE, Cherry Hill respectfully requests judgment against Grunley in the amount of $1,351,098, plus interest.

## Count IV
### (Breach of Payment Bond)

30.    Cherry Hill incorporates by reference, and realleges, paragraphs 1 through 29 above.

31.    Cherry Hill had a direct contract with Grunley to furnish labor, materials or both for use in Grunley's performance of the Contract, and as such, is a beneficiary under the Bond issued by St. Paul and CNA.

32.    Grunley breached the Subcontract by not remitted payment to Cherry Hill of the outstanding balance of $1,351,098, plus interest.

33.    St. Paul and CNA have not remitted payment to Cherry Hill per the Bond of the outstanding balance owed by Grunley to Cherry Hill of $1,351,098, plus interest.

34.    Under the terms and provisions of the Bond, St. Paul and CNA are obligated to remit payment to Cherry Hill in the amount of $1,351,098, representing the amount due and owing to Cherry Hill for labor, materials and equipment furnished to Grunley for use in performing the Contract, plus interest.

WHEREFORE, Cherry Hill respectfully requests judgment against St. Paul and CNA in the amount of $1,351,098, plus interest.

CHERRY HILL CONSTRUCTION, INC.

By: _____
Counsel

Joseph C. Kovars
Jay Bernstein
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 685-1120 (telephone)
(410) 547-0699 (facsimile)

1955437.v1

# Exhibit A

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) December 5, 2003 | FORM APPROVED OMB NO 9000-0045 BOND NO. JJNSII-001 J32331D627 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | |
|---|---|---|
| Grunley-Walsh Joint Venture, LLC 11910 Parklawn Drive, Suite U Rockville, MD 20852 | ☐ INDIVIDUAL ☐ JOINT VENTURE | ☐ PARTNERSHIP ☒ CORPORATION |
| | STATE OF INCORPORATION MD | |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| St. Paul Fire and Marine Insurance Company, 14120 Newbrook Drive, Suite 160, Chantilly, VA 20151-2223 and The Continental Insurance Company, 6021 University Boulevard, Suite 500, Ellicott City, MD 21043 | MILLION(S) 13 | THOUSAND(S) 893 | HUNDRED(S) 216 | CENTS 00 |
| | CONTRACT DATE 12/05/03 | CONTRACT NO. 1443CX3D5908901, Task Order No. 35 | | |

OBLIGATION:

We, the Principal and Surety (ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:
The Above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:
The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| Grunley-Walsh Joint Venture, LLC | | | | |
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | |
| NAME(S) (Typed) | 1. | 2. | |

| CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|
| SURETY A | St. Paul Fire and Marine Insurance Company 14120 Newbrook Drive, Suite 160 Chantilly, Virginia 20151-2223 | STATE OF INC. | LIABILITY LIMIT $ | |
| NAME & ADDRESS | | MN | 284,816,000 | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. Stephen A. Spencer Attorney-In-Fact | 2. | | |

NSN 7540-01-152-8041.
Previous edition not usable

STANDARD FORM 25-A (REV 1-90)
Prescribed by GSA – FAR (48 CFR) 53.228(c)

**CORPORATE SURETY(IES) (Continued)**

| SURETY B | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | The Continental Insurance Company 6021 University Boulevard, Suite 500 Ellicott City, Maryland 21043 | NH | 473,109,000 | Corporate Seal |
| SIGNATURES | 1. 2. | | | |
| NAME(S) & TITLE(S) (Typed) | Stephen A. Spencer Attorney-In-Fact | | | |

| SURETY C | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | | | | Corporate Seal |
| SIGNATURES | 1. 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. 2. | | | |

| SURETY D | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | | | | Corporate Seal |
| SIGNATURES | 1. 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. 2. | | | |

| SURETY E | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | | | | Corporate Seal |
| SIGNATURES | 1. 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. 2. | | | |

| SURETY F | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | | | | Corporate Seal |
| SIGNATURES | 1. 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. 2. | | | |

| SURETY G | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | | | | Corporate Seal |
| SIGNATURES | 1. 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. 2. | | | |

**INSTRUCTIONS**

6. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270c). Any deviation from this form will require the written approval of the Administrator of General Services.

7. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

8. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties. (b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

9. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

10. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25-A (REV. 1-90) BACK

**StPaul Surety**

St. Paul Fire and Marine Insurance Company
Paul Guardian Insurance Company
Paul Mercury Insurance Company
Seaboard Surety Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Medical Liability Insurance Company

Bond No. 400SU1001

## RIDER CONTAINING
## DISCLOSURE NOTICE OF TERRORISM COVERAGE

This disclosure notice is required by the Terrorism Risk Insurance Act of 2002 (the "Act"). No action is required on your part. This Disclosure Notice is incorporated in and a part of the attached bond, and is effective the date of the bond.

You should know that, effective November 26, 2002, any losses covered by the attached bond that are caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by the Act. Under this formula, the United States reimburses 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

Under the Act, there is a cap on our liability to pay for covered terrorism losses if the aggregate amount of insured losses under the Act exceeds $100,000,000,000 during the applicable period for all insureds and all insurers combined. In that case, we will not be liable for the payment of any amount which exceeds that aggregate amount of $100,000,000,000.

The portion of your premium that is attributable to coverage for acts of terrorism is **$0.00.**

**IMPORTANT NOTE: THE COST OF TERRORISM COVERAGE IS SUBJECT TO CHANGE ON ANY BONDS THAT PREMIUM IS CHARGED ANNUALLY.**

## NOTICE

In accordance with the Terrorism Risk Insurance Act of 2002, we are providing this disclosure notice for bonds and certain insurance policies on which one or more of the Writing Companies identified below is the surety or insurer.

To principals on bonds and insureds on certain insurance policies written by any one or more of the following companies (collectively the "Writing Companies") as surety or insurer: Western Surety Company, Universal Surety of America, Surety Bonding Company of America, Continental Casualty Company, National Fire Insurance Company of Hartford, American Casualty Company of Reading, PA, The Fireman's Insurance Company of Newark, NJ, and The Continental Insurance Company.

## DISCLOSURE OF PREMIUM

The premium attributable to coverage for terrorist acts certified under the Act was Zero Dollars ($0.00).

## DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States will pay ninety percent (90%) of covered terrorism losses exceeding the applicable surety/insurer deductible.

Form F7218

# Exhibit B

*Subcontract #03096CHER001*

# Grunley-Walsh

## SUBCONTRACT AGREEMENT

SUBCONTRACT AGREEMENT MADE BETWEEN

THE CONTRACTOR:_____ **GRUNLEY-WALSH JOINT VENTURE, LLC** _____ **AND**

THE SUBCONTRACTOR:_____ **CHERRY HILL CONSTRUCTION** _____

ADDRESS_____ **8211 WASHINGTON BLVD JESSUP MD, 20791-0356** _____

PHONE No.:____ **(410) 799-3577** _____ FAX No.: ____ **(410)799-5483** _____

| 1. THE PROJECT | |
|---|---|
| G-W JOB NO: 03096 | JOB INFO PACKAGE ENCLOSED: Yes X |
| COST CODE: 02-100 | NTP: |
| CONTRACT NO: 1443C3059980901 - Task Order No. 35 - Mobilization Phase | |
| OWNER National Capitol Parks-Central | |
| JOB NAME: Washington Monument Design and Construction | |
| LOCATION Washington Monument, Washington, DC | |

### SCOPE OF WORK

2.  Subcontractor warrants that it is thoroughly familiar with the site conditions and the Prime Contract Documents and that the Subcontractor shall furnish anything necessary to complete in place the to complete in place the Site Work/Site Survey/concrete/Bollards /Add Alternated List work as set forth below in strict accordance with the Prime Contract Documents including plans, specifications, attachments, general provisions, general and special conditions.

**INCLUDES:**
- Add Alternate #4 – Concrete Wall, Add Alternate #5 – Concrete Paving, Add Alternate #10 Crowd control sockets and Concrete Light Vaults.
- Quantity deduction of the slot drains and light vaults shall be negotiated with Cherry Hill Contracting.
- ~~This is a firm fixed no change order contract~~  \* See below.

Grunley-Walsh reserves the exclusive and sole right to exercise all remaining contract options as described in the prime contract documents and as listed below:

<None>

Also included are all security and safety requirements, compliance with federal, state and local regulations, OSHA and the National Park Services regulations, submittal of certified Payroll, submittals, samples, surveys, transportation of your personnel, materials and equipment, coordination with Grunley-Walsh Joint Venture and other trades, participation in scheduling, protection of existing elements and quality control.

### Flow-Down Relationship

3.  The Subcontractor is bound to the Contractor in the same way the Contractor is bound to the Owner and shall assume toward the Contractor all the obligations and responsibilities which the Contractor assumes toward the Owner and shall have the benefit of all rights, remedies and redress against the Contractor, pursuant to the Prime Contract, has against the Owner, except that this Subcontract shall govern any inconsistent provision of the Prime Contract.

### THE SUBCONTRACT SUM

4.  The Contractor shall pay the Subcontractor for the performance of this *Subcontract Six Million Fifty Four Thousand Eight Hundred Fifty Nine Dollars /zero cents ($6,054,859.00)* in partial payments as hereinafter described.

\* Subcontractor shall work diligently with the Contractor to minimize the cost to the Contractor due to changes in the work being performed by the Subcontractor. The Subcontractor is not and was not a part of the design phase of this project, therefore, additive and deductive change orders will be negotiated. This paragraph supersedes Article 3, Flow-Down Relationship, where applicable, i.e. design/build.

*Subcontract #03096CHER001*

### Price And Payment

5. The Subcontract price shall be paid in partial payments, when received by the Contractor from the Owner, to Subcontractor for the payment for work in place and material on jobsite. Payment from the Owner is a specific condition precedent to the Contractor's obligation to pay the Subcontractor, the risks of nonpayment by the Owner being on the Subcontractor for its portion of the work in place or material on the job site. Ten percent (10%) retention shall be withheld until final payment is due except that retainage will be reduced when and to the extent the Owner's retainage withheld from the Contractor is reduced. Final payment shall be due after completion of all work, acceptance by the Owner, compliance with all Subcontract obligations, and receipt of final payment from the Owner, which items shall be conditions precedent to the making of final payment to Subcontractor. The Contractor is entitled to proof of payment for labor, material and services used before any payment is due. Material paid for shall belong to the Contractor, but shall remain in the care, custody and control of Subcontractor and be stored at Subcontractor's risk. The Subcontractor shall be responsible at all times for his labor and/or materials until same is accepted by the Owner. Subcontractor shall furnish guarantees and all other documents required by the Prime Contract for the Subcontractor's work, including releases of all claims and liens as a condition precedent for final payment. Partial releases may be required at the Contractor's option as a condition precedent to any partial payments for work completed and the Contractor may require the Subcontractor to certify and/or exhibit such other evidence that all entities furnishing labor, materials, and equipment under prior requisitions have been paid in full. Liquidated damages withheld by Owner will be assessed against Subcontractor for delay attributable to Subcontractor's fault. The Subcontractor shall itemize the Subcontract price as a basis for establishing value of work completed, and partial payments. Subcontractor agrees that it will not be paid by the Contractor for work and materials in place until ten (10) days after the Contractor's receipt of payment from the Owner. If the Contractor withholds making payment to the Subcontractor until the Subcontractor has complied with the aforesaid terms and conditions, the Subcontractor shall still diligently proceed with the work as required.

### Liability And Indemnity Insurance

6. The Subcontractor shall procure, at its sole cost and expense, the insurance coverages set forth below, and shall maintain such coverages in full force and effect as specified in this Paragraph. The Subcontractor shall include the Contractor [Grunley-Walsh] as an additional insured to the insurance policies described below. The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the Contractor. All such insurance policies shall indicate that as respects the insured (whether named or otherwise), cross liability and severability of interests shall exist for all coverage's provided there under. In addition, all such insurance policies shall include a waiver of subrogation endorsement in favor of the additional insured. The insurance specified below shall be placed with insurance companies reasonably acceptable to Contractor, shall be written on an occurrence basis, and shall incorporate a provision requiring the giving of notice to Contractor at least thirty (30) days prior to the cancellation, non-renewal or material modification of any such policies. The Subcontractor shall promptly furnish the Contractor with certificates of insurance evidencing the insurance required hereunder, and shall not commence any services under this Agreement until such insurance is obtained.

(i) Commercial General Liability Insurance. A broad form Commercial General Liability Insurance Policy in form and substance reasonably acceptable to the Contractor and including, without limitation, appropriate endorsements adding the following coverages: Premises and Operations Liability; Explosion, Collapse and Underground Damage Liability; Personal Injury Liability (with employee and contractual exclusions deleted); Broad Form Property Damage Liability; Contractual Liability supporting the Contractor's indemnification agreements in this Contract; Completed Operations and Products Liability for a period of not less than three (3) years following the Contractor's acceptance of the Project; and Independent Contractor's Protective Liability. The Commercial General Liability Insurance Policy must be written with a combined single limit of liability of not less than $1,000,000 for each occurrence of bodily injury and/or property damage and an annual aggregate of liability per project of not less than $2,000,000 for bodily injury and/or property damage, and an annual aggregate of liability of not less than $2,000,000 for Completed Operations and Products Liability.

(ii) Comprehensive Automobile Liability Insurance. A Comprehensive Automobile Insurance Policy in form and substance reasonably acceptable to the Contractor [Grunley-Walsh]. The Comprehensive Automobile Liability Insurance Policy must provide coverage for all owned, hired, rented and non-owned automobiles, and must be written with a combined single limit of liability of not less than $1,000,000 for each occurrence of bodily injury and/or property damage.

(iii) Worker's Compensation Insurance. A Worker's Compensation Insurance Policy in form and substance reasonably acceptable to the Contractor and in an amount not less than the statutory limits (as may be amended from time to time), including Employees Liability Insurance with limits of liability of not less than (i) $500,000 for bodily injury by accident, each accident, (ii) $500,000 for bodily injury by disease, each employee, and (iii) $500,000 aggregate liability for disease.

(iv) Property Insurance. A Property Insurance Policy covering all materials, equipment and other portions of the Work stored off-site or in transit; it being expressly acknowledged and agreed by the Contractor that it shall assume responsibility for any loss or damage to such property.

(v) Umbrella Liability Insurance. An Umbrella Liability Insurance Policy in form and substance reasonably acceptable to the Contractor [Grunley-Walsh] written in excess of the coverages provided by the insurance policies described above in subsections (i),(ii) and the Employer's Liability in (iii). The Umbrella Liability Insurance Policy must be written with a combined single limit not less than $5,000,000 for each occurrence of bodily injury and/or property damage, and an annual aggregate of liability of not less than $5,000,000 for bodily injury and/or property damage.

The Contractor shall not insure nor be responsible for any loss or damage to tools, equipment or other property of any kind owned, rented or leased by the Subcontractors, sub-subcontractors, or their respective employees or agents.

2

*Subcontract #03096CHER001*

To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants and agents and employees of any of them from and against all injuries, claims, damages, losses and expenses, including but not limited to attorney's fees, arising directly or indirectly out of the obligations herein undertaken or resulting out of operations conducted by the Subcontractor, Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such injury, claim, damage, loss or expenses is caused in part by a party indemnified hereunder, save and except claims or litigation caused by or resulting from the sole negligence of the party indemnified hereunder.

## Bonds <Not Required for this contract from Grunley-Walsh>

7. The Subcontract shall furnish performance and payment bonds in a form satisfactory to the Contractor and in the Department of the Treasury's approved sureties list, in an amount equal to the Subcontract sum, which bonds shall carry the surety's consent to changes in price and time of performance necessary to conform to Prime Contract requirements. Furnishing of said bonds shall be a condition precedent to the Contractor's obligation to release partial payments.

## Shop Drawings, Samples, And Data Submissions

8. All submittals such as shop drawings, catalogs, samples and material lists required by Prime Contract, which pertain to this work, shall be furnished in a complete and timely manner. Subcontractor shall be responsible for delays because of failure to do so and for any deviation from plans and specifications. All deviations from the Prime Contract documents must be noted clearly on the submittals, and by separate cover letter the Subcontractor shall state reasons for the deviation and refer to the applicable contract provision. The complete set of submissions for this Subcontract work shall be submitted by the Subcontractor to the Contractor within thirty (30) days from the date of this Subcontract, unless otherwise stated in the Contractor's Schedule of Progress. Approval by the Owner or the Contractor does not constitute a waiver or modification of the Prime Contract requirements.

## Time Is Of The Essence

9. Time is of the essence. The Contractor has the right to direct the manner in which the Subcontractor performs its work. Subcontractor shall proceed with the performance of the work at such time and in such sequence as the Contractor may direct and/or as required by the Schedule of Progress, which may be updated and revised from time to time by the Contractor as working conditions require, including overtime or shift work performance as necessary. If overtime or additional shifts are required solely to accelerate project completion through no fault of the subcontractor, it shall be authorized in writing prior to such acceleration effort and be paid for by the Contractor. Payments due may be withheld to insure timely progress and completion of work. The Subcontractor shall be liable for all losses and damages incurred by the Contractor (including consequential damages) due to inexcusable delays of the Subcontractor in the performance of the work, including delay costs not reimbursable from the Owner due to concurrent, inexcusable delays of the Subcontractor.

## Extensions Of Time

10. Subcontractor shall be entitled to an extension of time for performing and completing the work covered by this subcontract upon the same terms and conditions an extension of time is allowable under the Prime Contract, and only to the extent that an extension of time is actually granted to the Contractor by Owner, or its representative under the Prime Contract. The Subcontractor shall give notice of the excusable delay to the Contractor by Owner, or its representative under the Prime Contract. The Subcontractor shall give notice of the excusable delay to the Contractor in writing within three (3) calendar days from the beginning of said delay in order that the Contractor may in turn notify the Owner. If notice is not given timely, said excusable delay may be considered waived. The Owner's decision, or its representative's, with regard to the delay, including the assessment of liquidated damages, shall be binding upon and chargeable to the Subcontractor, subject to the disputes procedure provided in the Prime Contract.

## Damages For Delay

11. The Contractor shall not be independently liable to Subcontractor for any unforeseeable delay or interference occurring beyond the Contractor's control or for delay or interference caused by Owner or other subcontractors or suppliers. Subcontractor shall only be entitled to reimbursement for any damages for delays recovered on its behalf by the Contractor from the Owner or others. The Subcontractor shall have the right, at its expense, to exercise all provisions of the Prime Contract to recover said damages against the Owner. In the event that the Contractor seeks to recover damages for delay against the owner or others and the Subcontractor participates in such claim, the Subcontractor shall be responsible for its pro rata share of any legal expert or other expenses in presenting and/or prosecuting the overall claim. The Contractor shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the work herein. A time extension shall be the sole and exclusive remedy of the Subcontractor for delays or suspensions caused by Contractor, even if the delays or suspensions were: (1) of a kind not contemplated by the parties, (2) amounted to an abandonment of the contract, or (3) were caused by active interference.

## Schedule

12. The Contractor may schedule this project using CPM Schedule techniques and/or simple bar charts. Subcontractor agrees to meet with the Contractor and to provide the necessary detailed information to properly depict activities, including their costs and duration, at no additional cost to the Contractor. All such data shall be provided within fifteen (15) days of the Contractor's written notice and request. The Contractor may at its option withhold making payments to the Subcontractor until the Subcontractor has provided said information. The Contractor may modify and change the schedule from time to time as it deems appropriate in accordance with actual performance conditions. Subcontractor shall perform the work as directed by such schedules as expeditiously as possible despite any pending disputes.

## Default Termination

13. The following events determined by the good faith judgment of the Contractor shall be deemed a breach of this Agreement by the Subcontractor: Failure to expeditiously prosecute and complete the whole or any part of the work in accordance with the current Schedule of Progress and/or directions from the Contractor, failure to pay for labor and material, payroll taxes, contributions or insurance premiums; interference with the performance of work by others for any reason; an act of bankruptcy or insolvency; or any other material failure to fulfill obligations of this Subcontract or of the Prime Contract concerning the Subcontractor's work or responsibilities. If the Subcontractor

3



*Subcontract #03096CHER001*

breaches the Subcontract, the Contractor may terminate Subcontractor's right to proceed upon three (3) days written notice. In the event that the Contractor believes in good faith that the work is being endangered by the Subcontractor's failure to prosecute the work or take action, such written notice may be omitted and the Subcontractor's performance in whole or in part may be immediately terminated. The Contractor may then have the work completed and may use Subcontractor's material, supplies, tools and equipment to complete. Subcontractor and its surety shall continue to be liable for all costs to complete and any damages and expenses including reasonable counsel fees, liquidated damages assessed by owner and other liabilities which may result from the default and breach, without waiver of any other rights or remedies available to the Contractor, including right of setoff and collection of any funds which may be due Subcontractor under other subcontracts with the Contractor. If the Contractor wrongfully exercises its default option under this Article, the Subcontractor's remedy shall be solely and exclusively under Article 27, Termination for Convenience.

The Subcontractor agrees that in the event the Contractor is terminated for default by the Owner, all disputes relating to or arising out of the Subcontract shall be stayed pending the final resolution of the Contractor's termination for default in accordance with the administrative and/or judicial disputes procedures in the prime contract. The Subcontractor further agrees that all payment bond actions by the Subcontractor against the Contractor shall be stayed pending the final resolution of the Contractor's termination for default. In the event that the Owner's termination for default of the Contractor is upheld, the Subcontractor agrees that the amount of any recovery the Subcontractor is entitled to from the Contractor shall be limited to the recovery allowed pursuant to Article 27, Termination for Convenience.

## Extra Work

14. The Contractor may at any time direct the Subcontractor to perform extra work or changes under this Subcontract. Only extra work authorized by the Contractor as an extra or change in writing shall be paid for by the Contractor. If the extra work direction does not originate from Owner's direction and there is no prior agreement on price, then Subcontractor shall be paid for the actual direct costs of said work plus fifteen percent (15%) for overhead, profit, supervision and small tools, which will constitute the entire amount due the Subcontractor for the extra work, including any impact or delay effect.

## Owner Changes

15. Changes ordered by Owner shall be performed and paid for in accordance with the terms of the Prime Contract, including all rights of dispute and appeal, provided reservation and exercise of said rights to not interfere with the progress of the work. Payment for Owner changes shall be made in accordance with Paragraph 5, Price and Payment, and payment for Owner changes shall not be due the Subcontractor as a specific condition precedent until the Contractor from the Owner receives said payment.

## Contract Interpretation

16. The Contractor's interpretation of contract requirements shall be binding upon Subcontractor and complied with, except that Subcontractor shall have the right to claim adjustment of the contract because of said interpretation, if said claim is made in writing within forty-eight (48) hours after ruling and direction.

## Disputes

17. Disputes arising out of Owner acts, omissions or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract. Subcontractor shall have the right to exercise the Contractor's rights at the Subcontractor's sole cost and shall be bound thereby. The Contractor shall have no direct liability to the Subcontractor except to give the Subcontractor the opportunity to exercise the rights in the Prime Contract. The Subcontractor shall be required as a condition precedent to submitting a claim against the Owner to certify its claim in accordance with all certification requirements in the Prime Contract. Subcontractor agrees to indemnify and hold harmless the Contractor for any defects or misrepresentations in its certifications, including any relating to cost or pricing data. In the event that arbitration is provided for in the Prime Contract for disputes between the Owner and the Contractor, Subcontractor specifically agrees to submit its disputes arising out of said Owner acts, omissions or responsibilities in any arbitration proceeding between the Owner and the Contractor. Subcontractor shall be given the opportunity to confer with the Contractor in the selection of arbitrators, unless the dispute is solely one between the Owner and Subcontractor, in which event the Subcontractor may make the selection of arbitrators in the Contractor's name. All disputes between the Contractor and Subcontractor, not involving the Owner's acts, omissions or responsibilities shall, at the contractor's sole option, be resolved by arbitration in accordance with the rules of the American Arbitration Association. Subcontractor specifically agrees that any such arbitration proceedings shall, at the Contractor's sole option, be consolidated with any arbitration proceedings between the Contractor and any other party.

Subcontractor specifically agrees that any dispute with the Owner or the contractor shall not interfere with Subcontractor's progress of its work in any manner, and that Subcontractor shall proceed with its work as ordered, subject to claim. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof. Any such award shall be binding and enforceable against any persons, surety and/or bonding company, which guarantee the performance by the Subcontractor of this Agreement in any manner.

## Backcharges

18. All charges and backcharges assessed by the Contractor against the Subcontractor shall be deemed accepted by Subcontractor unless rejected in writing within thirty (30) days. The Contractor is authorized to deduct and offset from any payments due Subcontractor an amount equal to any and all sums, obligations, liabilities, backcharges, claims (liquidated or unliquidated) owed by Subcontractor to Contractor arising under this Subcontract or any other contract or agreement between the Subcontractor and the Contractor.

## Plant And Cleanup

19. Subcontractor shall provide its own plant and facilities, including scaffolding and hoists, do its own cleanup, and repair or replace damaged, defective and defaced work caused by its own negligence. The Subcontractor shall cleanup and remove from the site all of its rubbish, debris, etc. on a daily basis, unless the Contractor directs otherwise. Upon completion of the subcontract work, all Subcontractor's materials, equipment, etc. must be immediately removed from the jobsite by Subcontractor. Failure to comply will permit the Contractor to do so and backcharge Subcontractor for the cost. If Subcontractor uses the Contractor's hoist, scaffolding or facilities, it will be responsible for the

4

operating expenses of such equipment when in use for Subcontractor's benefit.

## Bankruptcy And Delinquent Taxes

20. In the event of any act of bankruptcy insolvency by the Subcontractor or notice of levy involving delinquent taxes owed by Subcontractor, the contractor shall have the right to withhold payments and apply the same to secure performance of the Subcontract without prejudice to al other rights against Subcontractor or its surety.

## Responsibility For Work In Place

21. The Subcontractor shall check all work performed by others necessary to "receive" the Subcontractor's work. Failure to give notice of any discrepancy shall relieve the Contractor of any responsibility therefore. The Subcontractor shall be responsible for all field measurements and shall check elevations and grades to insure proper fitting of its work. It shall not be incumbent upon the Contractor to discover any mistakes, errors, omissions or deviations from the contract requirements in the subcontract drawings, and the Owner's final approval of drawings made by the Subcontractor shall not relieve the Subcontractor from responsibility for unauthorized changes, deviations or omissions or for error of any sort in its drawings.

## Licenses And Fees

22. Subcontractor shall be responsible for all taxes, permits, licenses and fees necessary to perform its work, including any increase therein, if any, during the life of the Subcontract.

## Labor Force

23. Subcontractor shall be responsible for performance regardless of any interference of any trades council or other labor or union organization. Any work stoppage by employees which will in the opinion of the Contractor unreasonably delay the work will be a breach of the Subcontract subject to the rights set forth in Paragraph 13. The Subcontractor shall immediately remove from the work such of his employees as the Contractor shall deem incompetent, careless, insubordinate or otherwise undesirable. The Subcontractor shall employ at all times a sufficient number of workmen with sufficient equipment and proper materials which in the opinion of the Contractor shall be required to prosecute the work in a diligent and expeditious manner.

## Nondiscrimination

24. Subcontractor shall not discriminate against any employee or applicant for employment, advancement, transfer, layoff or termination because of race, religion, color, sex or national origin. All Equal Opportunity or affirmative action requirements of the Prime Contract shall be obligations of the Subcontractor, including:

Executive Order 11246, As Amended .
Part II - Nondiscrimination in Employment by Government Contractors and Subcontractors: Subpart B - Contractors' Agreements:
SEC. 202. During the performance of this contract, the subcontractor agrees as follows:

(1) The subcontractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The subcontractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The subcontractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The subcontractor will, in all solicitations or advancements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

(3) The subcontractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the labor union or workers' representative of the contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The subcontractor will comply with all provisions of Executive Order No. 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(5) The subcontractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders. .

(6) In the event of the subcontractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated, or suspended in whole or in part and the subcontractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(7) The subcontractor will include the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The subcontractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the subcontractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction, the subcontractor may request the United States to enter into such litigation to protect the interests of the United States."

### Superintendence

25. Subcontractor shall employ full-time on the jobsite a competent Superintendent, satisfactory to the Contractor with full authority to act on Subcontractor's behalf. The Contractor shall have the right to require the Subcontractor to replace the Superintendent if, in the opinion of the Contractor, the Subcontractor's Superintendent is not satisfactorily performing the work.

### Patent Infringement

26. Subcontractor shall indemnify the Contractor from any use or infringement of patents.

### Termination For Convenience

27. Contractor shall have the right to terminate this Agreement for its own convenience for any reason by giving notice of termination effective upon receipt thereof by Subcontractor. Termination for default under Paragraph 13, if wrongfully made, shall be treated as a termination for convenience. Settlement with the Subcontractor shall be accomplished in accordance with the provisions of the Termination for Convenience clause in the Prime Contract. If the Termination for Convenience clause in the Prime Contract is not applicable, the Subcontractor shall only be paid either the actual cost for work and labor in place, plus fifteen percent (15%), or a pro rata percentage of the Subcontract amount equal to the percentage of completion for the Subcontractor's work as approved by the Contractor, whichever is less. Subcontractor shall not be entitled to anticipated profits on unperformed portions of the work

### Assignment

28. No assignment hereunder, including an assignment of proceeds due or to become due to the Subcontractor is allowed without prior written approval of the Contractor.

### Notices

29. All notices required under this Subcontract or the Prime Contract shall be addressed to Contractor's office located at 11910 Parklawn Dr., Suite U, Rockville, MD 20852. Notices required by the various provisions of the Prime Contract (not otherwise dealt with herein) shall be due in the Contractor's office in one-half (½) the time specified in the Prime Contract so that Contractor will have sufficient time to forward its notice within the required period. Failure of Subcontractor to forward notices in a timely manner as required by the various equitable adjustment provisions of the Prime Contract shall operate to waive its rights to any such adjustments if the Owner rejects the claim.

### Owner Approval

30. This Agreement is contingent upon Subcontractor or its product being approved by the Owner. If a disqualification occurs because of failure to comply with and strictly fulfill the obligations herein, said failure shall be deemed a breach by the Subcontractor. Any other rights of disqualification by Owner shall render this Agreement null and void.

### Recitation, Severability, And Waiver

31. Attachments are part of this Agreement. If this Agreement is retained by Subcontractor without executing and returning same within fifteen (15) days, it shall be deemed accepted; however, acceptance in writing is a condition precedent to payment due hereunder. The Subcontractor shall not deal directly with or work directly for Owner. This instrument is the entire Agreement between the parties. If any provision herein is held to be invalid by any competent court, the remaining Agreement shall survive. This Agreement shall control any inconsistency in any documents referred to or incorporated by reference. It is further agreed that no action or failure to act by the Contractor shall constitute a waiver of any breach of any term or condition in the Agreement or any subsequent breach thereof, not shall such action or failure to act constitute a waiver of any right offered Contractor under this Agreement.

### OSHA

32. Subcontractor shall comply with OSHA and any other relevant and applicable federal, state and local safety regulations, standards and requirements. Subcontractor shall indemnify Contractor from any failure to comply with these requirements including fines and abatement costs and delays to project. Failure to comply shall be a breach of contract, subject to provisions of Paragraph 13.

### Liquidated Damages

33. In the event that liquidated damages are assessed against the Contractor and it is determined that Subcontractor is responsible to the Contractor for said liquidated damages, then Subcontractor shall pay to the Contractor liquidated damages in addition to any damages incurred by the Contractor as the result of Subcontractor's failure of performance.

### Mechanic's Liens

34. Subcontractor hereby waives it right to any mechanic's liens on the property of the Owner to the extent allowed by law.

### Execution

35. This subcontract must be executed by the Subcontractor and returned to the Contractor within fifteen (15) days of its receipt by the Subcontractor. Until the subcontract is executed and returned to the Contractor, along with any required bonds and certificates of insurance, the Contractor has the right to withhold any payment due the Subcontractor.

### Governing Law

36. This subcontract shall be governed by the laws of the State where Contractor has its principal office and any actions or lawsuits arising hereunder to the extent permitted by law shall be brought in the District where Contractor's principal office is located without regard to principles of conflict of laws or forum non-convenience.

Subcontract #03096CHER001

CHERRY HILL CONSTRUCTION
Subcontractor

Signature

James A. Openshaw, Jr., President
Name & Title

Date:  2/23/04

GRUNLEY-WALSH JOINT VENTURE
Contractor

Signature

Loren D. Raap, General Manager
Name & Title

Date:  3.4.04

*Subcontractor to sign and initial each sheet and return both copies of the Subcontract Agreement to the Contractor within fifteen days. The Contractor will then sign and return one copy for the Subcontractor's files.*

7
*Date 2/2/04*

# Exhibit C

# Grunley-Walsh, LLC

5010 Nicholson Lane
Suite 200
Rockville, MD 20852

Phone: 202-347-9322
Fax: 202-393-1118

**CHANGE ORDER**
No. 00002

**TITLE:** Site Work/Concrete/Site Surevey/Bol

**PROJECT:** Washington Monument Const.Phase

**TO:** Attn: Jerzy Yurek Myckow
Cherry Hill Construction
8211 Washington Blvd
Jessup, MD 20794
Phone: 410-799-3577  Fax: 410-799-9745

**DATE:** 11/23/2004

**JOB:** 1443C3059980901◇G-W 03-0

**CONTRACT NO:** 03096CHER001

| RE: | To: | From: | Number: |
|-----|-----|-------|---------|

## DESCRIPTION OF CHANGE

Title : Site Work/Concrete/Site Surevey/Bollards
Number : 03096CHER001
From : GWJV
To : CHER

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net.Amount |
|------|-------------|--------|----------|-------|-----------|----------|-----------|-----------|
| 00001 | 950.38.01/35 ( RCO 3 Aug 04) Elimination of Concrete Light Vaults | | 1.000 | | ($207,513.00) | 0.00% | $0.00 | ($207,513.00) |
| 00002 | 950.33 Subsitution of PVC pipe w/ADS pipe | | 1.000 | | ($13,574.00) | 0.00% | $0.00 | ($13,574.00) |
| 00003 | 950.34 Elimination of Sanitary sewer | | 1.000 | | ($63,214.00) | 0.00% | .$0.00 | ($63,214.00) |
| 00004 | 950.32  Elimination of Drain at sidewalk | | 1.000 | | ($27,612.00) | 0.00% | $0.00 | ($27,612.00) |
| 00005 | 950.43 Trees relocated by GW | | 1.000 | | ($2,200.00) | 0.00% | $0.00 | ($2,200.00) |
| 00006 | 950.35 - Elimination of Slot Drain | | 1.000 | | ($31,702.00) | 0.00% | $0.00 | ($31,702.00) |
| 00007 | 950.46 Repair 4" water line | | 1.000 | | $1,357.00 | 0.00% | $0.00 | $1,357.00 |
| 00008 | 950.47 Repair 2" water line | | 1.000 | | $1,604.00 | 0.00% | $0.00 | $1,604.00 |
| 00009 | 950.11 Temporary light demo (Mock-ups) | | 1.000 | | $3,493.00 | 0.00% | $0.00 | $3,493.00 |
| 00010 | 950.16 Furnish and Install Sleeves under footers | | 1.000 | | $15,712.00 | 0.00% | $0.00 | $15,712.00 |

| | |
|---|---|
| The Original Contract Sum was | $6,054,859.00 |
| Net Change by Previously Authorized Requests and Changes | $0.00 |
| The Contract Sum Prior to This Change Order was | $6,054,859.00 |
| The Contract Sum Will be Decreased | ($193,532.00) |
| The New Contract Sum Including This Change Order | $5,861,327.00 |
| The Contract Time Will Not Be Changed | |
| The Date of Substantial Completion as of this Change Order Therefore is | |

**ACCEPTED:**

Cherry Hill Construction
By: Kenneth J. Leahy, P.E.
Projects Director
Date:  5/09/05

Grunley-Walsh, LLC
By: 
Cleo A Kimbembe
Date: 05/20/05

By: 
Date: 

Expedition ®

# Grunley-Walsh, LLC

5010 Nicholson Lane
Suite 200
Rockville, MD 20852

Phone: 202-347-9322
Fax: 202-393-1118

**CHANGE ORDER**
**No. 00003**

**TITLE:** Site Work/Concrete/Site Surevey/Bol

**DATE:** 4/25/2005

**PROJECT:** Washington Monument Const.Phase

**JOB:** 1443C3059980901◇G-W 03-0

**TO:** Attn: Jerzy Yurek Myckow
Cherry Hill Construction
8211 Washington Blvd
Jessup, MD 20794
Phone: 410-799-3577   Fax: 410-799-9745

**CONTRACT NO:** 03096CHER001

| RE: | To: | From: | | Number: |

## DESCRIPTION OF CHANGE

Title : Site Work/Concrete/Site Surevey/Bollards
Number : 03096CHER001
From : GWJV
To : CHER

| Item Description | Stock | Quantity/Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|---|---|---|---|---|---|---|
| 00001 | 950.16.02 Installation of 4" sleeve under the footer 9/23/04 | 1.000 | $1,539.00 | 0.00% | $0.00 | $1,539.00 |
| 00002 | 950.16.03 Installation of 4" sleeve under the footers 10/13/04 thru 11/17/04 | 1.000 | $5,014.00 | 0.00% | $0.00 | $5,014.00 |
| 00003 | 950.16.04 Installation of 12" pipe sleeve under the West Walks | 1.000 | $3,308.00 | 0.00% | $0.00 | $3,308.00 |
| 00004 | 950.16.05 Installation of irrigation sleeves on NW sidewalk | 1.000 | $432.00 | 0.00% | $0.00 | $432.00 |
| 00005 | 950.27.01 Visitor Center Floor Slab Demo 4/07 to 05/17/04 | 1.000 | $9,576.00 | 0.00% | $0.00 | $9,576.00 |
| 00006 | 950.27.02 Visitor Center Floor Slab Demo | 1.000 | $4,901.00 | 0.00% | $0.00 | $4,901.00 |
| 00007 | 950.28.01 Remove and reset Super silt fence 5/19/04 - 6/24/04 | 1.000 | $17,526.00 | 0.00% | $0.00 | $17,526.00 |
| 00008 | 950.39 Substitution of 10 Gauge Wire mesh w/ 6 Gauge Wire Mesh | 1.000 | $2,587.00 | 0.00% | $0.00 | $2,587.00 |

| | |
|---|---|
| The Original Contract Sum was | $6,054,859.00 |
| Net Change by Previously Authorized Requests and Changes | ($193,532.00) |
| The Contract Sum Prior to This Change Order was | $5,861,327.00 |
| The Contract Sum Will be Increased | $185,041.00 |
| The New Contract Sum Including This Change Order | $6,046,368.00 |

The Contract Time Will ~~Not Be Changed~~ BE EXTENDED BY 45 WORKING DAYS CAK

The Date of Substantial Completion as of this Change Order Therefore is

**ACCEPTED:**

Cherry Hill Construction

By: Kenneth J. Leahy, P.E.
   Projects Director
Date: 5/09/05

Grunley-Walsh, LLC

By: _____
   Cleo A Kimbembe
Date: 05/20/05

By: _____
Date: _____

Expedition #

# Grunley-Walsh, LLC

5010 Nicholson Lane
Suite 200
Rockville, MD 20852

Phone: 301-881-8081
Fax: 301-881-8083

**CHANGE ORDER**
**No. 00005**

**TITLE:** Various Contract Change Order Items

**PROJECT:** Washington Monument Const. Phase

**TO:** Attn: Jerzy Yurek Myckow
Cherry Hill Construction
8211 Washington Blvd
Jessup, MD 20794
Phone: 410-799-3577 Fax: 410-799-9745

**DATE:** 8/10/2005

**JOB:** 1443C3059980901◇G-W 03-(

**CONTRACT NO:** 03096CHER001

RE:          To:          From:          Number:

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|------|-------------|--------|----------|-------|------------|----------|-----------|------------|
| 00001 | 950 37 01 Revise drain inlets | | 1 000 | | $11,957 00 | 0 00% | $0 00 | $11,957.00 |
| 00002 | 950 37 02 Revised Drain Inlets | | 1 000 | | $407 00 | 0 00% | $0 00 | $407.00 |
| 00003 | 950 38 02 Drain inlets Light vaults shop dwgs | | 1 000 | | $1,872 00 | 0 00% | $0 00 | $1,872.00 |
| 00004 | 950 38 01 Credit to eliminate Right vault drain | | 1 000 | | ($10,000 00) | 0 00% | $0 00 | ($10,000.00) |
| 00005 | 950 53 02 Layout wall lighting | | 1 000 | | $920 00 | 0 00% | $0 00 | $920 00 |
| 00006 | 950 64 03 12" Irrigation Water line | | 1 000 | | $10,638 00 | 0 00% | $0 00 | $10,638 00 |
| 00007 | 950 72 Remove Temporary Wooden Fence for GW | | 1 000 | | $2,788 00 | 0 00% | $0 00 | $2,788.00 |
| 00008 | 950 91 Remove existing post & Chain | | 1 000 | | $656 00 | 0 00% | $0 00 | $656.00 |
| 00009 | 950 96 Additional pour concrete lights/flag poles | | 1 000 | | $5,222 00 | 0 00% | $60 00 | $5,222.00 |
| 00010 | 951 04 Innauguration shut down | | 1 000 | | $9,709 00 | 0 00% | $0 00 | $9,709 00 |
| 00011 | 951 16 Pour concrete around flag pole lights | | 1 000 | | $1,417 00 | 0 00% | $0 00 | $1,417 00 |
| 00012 | 951 18 Repair 2" copper damaged by electrician | | 1 000 | | $1,122 00 | 0 00% | $0 00 | $1,122 00 |
| 00013 | 951 26 01 Repair NE drainage damaged by electrician | | 1 000 | | $6,384 00 | 0 00% | $0 00 | $6,384 00 |
| 00014 | 951 28 Chipping concrete wall for Control Boxes 951,98,01 | | 1 000 | | $1,513 00 | 0 00% | $0 00 | $1,513 00 |
| 00015 | 951 41 Correct subgrade along West sidewalk towards 17th street/remove debri | | 1 000 | | $1,289 00 | 0 00% | $0 00 | $1,289.00 |
| 00016 | 951 43 Install concrete picture frames to storm drain outside security walls | | 1 000 | | $7,524 00 | 0 00% | $0 00 | $7,524.00 |
| 00017 | 951 49 01 Remove subcontractors spoils per GW request | | 1 000 | | $24,000 00 | 0 00% | $0 00 | $24,000.00 |
| 00018 | 951 49 02 Remove soils Dewey Tree | | 1 000 | | $3,600 00 | 0 00% | $0 00 | $3,600 00 |
| 00019 | 951 49 03 Remove job-site spoils as GW request | | 1 000 | | $22,000 00 | 0 00% | $0 00 | $22,000 00 |
| 00020 | 951 62 01 Break existing concrete ADA ramp per GW request | | 1 000 | | $1,533 00 | 0 00% | $0 00 | $1,533 00 |
| 00021 | 951 62 02 Break existing ADA ramp per GW request | | 1 000 | | $600 00 | 0 00% | $0 00 | $800.00 |
| 00022 | 951 64 Conflict of existing telephone line and D-3 | | 1 000 | | $1,898 00 | 0 00% | $0 00 | $1,898 00 |

# Grunley-Walsh, LLC

5010 Nicholson Lane
Suite 200
Rockville, MD 20853

Phone: 301-881-8081
Fax: 301-881-8083

**CHANGE ORDER**
**No. 00005**

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|------|-------------|--------|----------|-------|-----------|----------|-----------|-----------|
| 00028 | 951 X7 01 <> Revise Trip Strip Trailer per Designer | | 1.000 | | $3,083.00 | 0.00% | $0.00 | $3,083.00 |
| 00030 | 951 03<> Repair 2" copper Stearn line @ North side | | 1.000 | LS | $30,228.00 | 0.00% | $0.00 | $30,228.00 |

|  | |
|---|---|
| Unit Cost: | $139,860.00 |
| Unit Tax: | $0.00 |
| **Total:** | **$139,860.00** |

| | |
|---|---|
| The Original Contract Sum was | $6,054,859.00 |
| Net Change by Previously Authorized Requests and Changes | ($8,491.00) |
| The Contract Sum Prior to This Change Order was | $6,046,368.00 |
| The Contract Sum Will be Increased | $139,860.00 |
| The New Contract Sum Including This Change Order | $6,186,228.00 |
| The Contract Time Will Not Be Changed | |
| The Date of Substantial Completion as of this Change Order Therefore is | |

**ACCEPTED:**

Cherry Hill Construction

By: Kenneth J. Leahy, P.E.

Date: 20 December 2005

Grunley-Walsh, LLC

By: Cleo A. Kimbembe
Project Manager

Date: 10 JAN 06

By: _____

Date: _____

# Grunley-Walsh, LLC

5010 Nicholson Lane
Suite 200
Rockville, MD 20852

Phone: 301-881-8081
Fax: 301-881-8083

**CHANGE ORDER**
**No. 00006**

**TITLE:** Site Work/Concrete/Site Survey/Bol

**PROJECT:** Washington Monument Const.Phase

**TO:**   Attn: Jerzy Yurek Myckow
Cherry Hill Construction
8211 Washington Blvd
Jessup, MD 20794
Phone: 410-799-3577  Fax: 410-799-9745

**DATE:** 12/12/2005

**JOB:** 1443C3059980901◇G-W 03-0

**CONTRACT NO:** 03096CHER001

**RE:**               **To:**               **From:**               **Number:**

## DESCRIPTION OF CHANGE

Various approved and agreed upon changes as of November 11th meeting w/GW and CHC

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|------|-------------|--------|----------|-------|-----------|----------|-----------|-----------|
| 00001 | RCO 950.28.03 - Remove and reset SS Fence | | 1.000 | | $23,606.00 | 0.00% | $0.00 | $23,606.00 |
| 00003 | RCO 951.22 - Repair existing 6" water line East of Sylvan Theater work performed outside of RCO 950.86 | | 1.000 | | $4,749.00 | 0.00% | $0.00 | $4,749.00 |
| 00004 | Modify Existin inlet @ SE in the sidewalk | | 1.000 | | $8,993.00 | 0.00% | $0.00 | $8,993.00 |
| 00005 | RCO 951.38 Challenger and disc @ T&M unit prices | | 1.000 | | $1,100.00 | 0.00% | $0.00 | $1,100.00 |
| 00006 | RCO 951.38.01 Challenger and disco T&M May 7 thru 14, 05 | | 1.000 | | $11,405.00 | 0.00% | $0.00 | $11,405.00 |
| 00007 | RCO 951.38.02 - Challenger and disc T&M May 15 thru June 1, 2005 | | 1.000 | | $3,330.00 | 0.00% | $0.00 | $3,330.00 |
| 00008 | RCO 951.47.01 Hauling Sand to site May 13,16,17,18,19,23,27 & 31 | | 1.000 | | $28,392.00 | 0.00% | $0.00 | $28,392.00 |
| 00009 | RCO 951.47.02 Hauling Sand June 10 & 16, 2005 | | 1.000 | | $4,635.00 | 0.00% | $0.00 | $4,635.00 |

951. 23

| | |
|---|---|
| The Original Contract Sum was | $6,054,859.00 |
| Net Change by Previously Authorized Requests and Changes | $131,369.00 |
| The Contract Sum Prior to This Change Order was | $6,186,228.00 |
| The Contract Sum Will be Increased | $249,616.00 |
| The New Contract Sum Including This Change Order | $6,435,844.00 |
| The Contract Time Will Not Be Changed | |
| The Date of Substantial Completion as of this Change Order Therefore is | |

**ACCEPTED:**

Cherry Hill Construction
By Kenneth J. Leahy, P.E.

Grunley-Walsh, LLC
By: _____
Cleo A Kimbembe

By: _____

Date: 20 December 2005

Date: 10 JAN 06

Date: _____

Expedition ®

# Exhibit D

CHC JOB NO. 1017

# WASHINGTON MONUMENT

## C: G:W Change Order Issued: Pending

| Item | Subcontractor EDP | Description | Initiating Date | CHC Initiating Letter Date | CHC Proposal Date | CHC Proposal Amount | Maspproves Assort | Approved Amount | Accepted Amount | Paid ex | Comment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6.8.F | | Test Piling Utilities Not Shown on the Plans 9/19/04 - 4/1/05 | | | 15-Mar-05 | 2,130.00 | X | 2,130.00 | 2,538.00 | Closed | Agreed/Pending CO |
| | | Installation of 28' Sleeve around Bell Sidewalk from 4/1/04 to 6/1/04 | | | 15-Mar-05 | 6,943.60 | | 6,943.60 | 6,943.20 | | NPS MOD ISSUED - Agreed/Pending CO |
| | | Engineer's Drawings and pipeline for pile hole 40/05/L | 5-Aug-04 | | 10-Mar-05 | 1,272.20 | X | X | 1,272.20 | Closed | Agreed/Pending CO |
| | | Excavatory Openings in the Tunnel SW site on 5/26/05 | | | 12-Apr-05 | 851.00 | X | X | 851.00 | Closed | Agreed/Pending CO |
| 6.16.A.1 | Davy Chan | Dowel work in the plaza Sidewalk 15th and 16th Street | 12-Aug-04 | | 18-Oct-04 | 103,417.50 | X | 103,417.50 | (126,417.50) | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| | | Bridging-Parties over Existing Tunnel @ SW corner as | 18-Aug-04 | | 17-Jun-05 | 4,103.60 | X | X | 4,103.00 | Closed | Agreed/Pending CO |
| | | Rebar 4" those Line along Ally by L/5 @ Place in NESCH @ | 20-Aug-04 | 20-Aug-04 | 30-Mar-05 | 2,083.00 | X | X | 2,083.00 | Closed | Agreed/Pending CO |
| | | Additional Deck Machine from existing 6"Ox4'd" Drain Drain System | 31-Aug-04 | | 30-Mar-05 | 21,179.00 | X | X | 21,179.00 | Closed | Agreed/Pending CO |
| | | Frames for Irrigation System per Drawings dated 9/4/04 | | | 29-Jun-05 | 7,774.60 | X | X | 7,774.60 | Closed | Agreed/Pending CO |
| 6.8.E | Davy Chan | Revised Sidewalk Location moving from NW corner Security Monument dated 9/2004 | 7-Oct-04 | 14-Oct-04 | 4-Nov-05 | 16,102.04 | X | 11,138.00 | 12,138.00 | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| | | As Built Drawing including submittals for November 2004 | | | 14-Mar-05 | 4,360.00 | X | X | 1,303.20 | Closed | Agreed/Pending CO |
| 6.8.C | Lyman | Backflow Lam for unnecessary cutting and chipping concrete area | 4-Mar-05 | | 17-Nov-05 | 3,527.00 | X | X | 3,627.00 | Closed | Agreed/Pending CO |
| | | Support operation for moving Temp. Screen Building on East side of Plaza | 4-Mar-05 | | 15-Nov-05 | 3,813.00 | X | 3,819.39 | 3,819.00 | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| | | Paint Escalator Gates | 30-Mar-05 | | 27-Oct-05 | 2,448.00 | X | X | 2,448.00 | Closed | Agreed/Pending CO |
| 6.8.1 | | Location of 16 lengths 8 W. side | 6-Apr-05 | | 27-Oct-05 | 600.60 | X | 500.04 | 600.00 | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| | | Chipping Concrete Wall for Collect Boxes on 6/2/V05 | | | 27-Aug-05 | 498.10 | X | X | 498.00 | Closed | Agreed/Pending CO |
| 6.8.H | | Cut-out Hours Entire Concrete Wall at Ledge for the Rebar | 25-Apr-05 | 28-Apr-05 | 6-Jun-05 | 3,208.20 | X | 3,866.60 | 3,208.00 | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| | | Repair E.W. Tunnel damaged by Negative Subcontractor | 27-Apr-05 | 28-Apr-05 | 5-Nov-05 | 890.00 | X | X | 890.00 | Closed | Agreed/Pending CO |
| | | Demo cut and backfill sidewalk @ East exit on 4/2/05 (37x15x5) and 4/3/05 (35x1.5x1) | 2-May-05 | 2-May-05 | 27-Oct-05 | 7,412.00 | X | X | 7,412.00 | Closed | Agreed/Pending CO |
| 6.8.F | | Adjust and Grade elevation to mount 4 rails sidewalk @ NE side | 11-May-05 | 11-May-05 | 15-Nov-05 | 1,713.00 | X | 1,713.00 | 1,713.00 | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| SE.w.8.1 Davy Chan | | Constitution Ave Theirs | 19-May-05 | 23-May-05 | 27-Jun-05 | 13,923.00 | X | 3,889.20 | 3,889.00 | Closed | NPS MOD ISSUED - Agreed/Pending CO |
| | | Remove other subcontractor's spoils on 6/1/05 | | | 27-Jun-05 | 3,613.60 | X | X | 3,613.00 | Closed | Agreed Pending CO |
| | | Remove other subcontractor's spoils on 5/10/05 and 7/8/05 | | | 4-Aug-05 | 6,000.60 | X | X | 6,000.60 | Closed | Agreed Pending CO |
| | | Dado for Bollards | 17-May-05 | 16-May-05 | 17-Nov-05 | 2,816.00 | X | X | 2,816.00 | Closed | Agreed Pending CO |
| G.W CLAIM | | Paper Water Line South along the Fence | 16-Jun-05 | 16-Jun-05 | 15-Nov-05 | 1,242.00 | X | X | 1,242.00 | Closed | Agreed Pending CO |
| | | Paper Sweeped 6" Channel to Monument Light Vault | 20-Jun-05 | 20-Jun-05 | 15-Nov-05 | 620.00 | X | X | 530.00 | Closed | Agreed Pending CO |
| 6.11.C | | Relines Existing Floor @ Ledge Pilot is applied with 6" Concrete from 6/7/05 | 26-Jun-05 | 26-Jun-05 | 15-Nov-05 | 8,966.00 | 8,966.00 | 8,966.00 | 5,366.00 | Closed | Agreed Pending CO |
| | | Demo Existing Uplifting Preliminarily | 29-Jun-05 | 12-Jul-05 | 16-Nov-05 | 4,182.00 | X | X | 4,182.00 | Closed | Agreed Pending CO |
| | | Backcharge for Additional Brick Installation to build up curb to accept Steps | 17-Aug-05 | 27-Aug-05 | X | X | | X | X | (1,956.00) | Closed | Agreed Pending CO |
| 150.12.01 | Latin | Test Piling Utilities Not Shown on the Plans 3/12/04 - 2/28/05 | 5-Feb-04 | | 17-Apr-05 | 2,841.00 | X | 2,841.09 | 2,641.00 | | Accepted by C.W on 2/28/05 Pending Change Order Issuance |

**CHANGE ORDER 7 AGREED PRICING**

April 21, 2006 Meeting / April 24, 2006 Letter Agreed Pricing

8/28/2007

Lieberman

**Misc Pending**

| | | Description | | | | | | Adjusted Amount | Accepted Amount | Paid (sq) | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | $ 1,033.00 | $ 13,912.00 | | NPS MOD issued Pending Change Order |
| | | Rework water fountains | | | | | 20,881.90 | 18,913.00 | $ 14,283.00 | | Pending Change Order |
| | | Spreading sand for topsoil | | | | 1 | 2,831.50 | 477.00 | $ 2,881.00 | | |
| | | | | | | | | 3,044.00 | $ 2,844.00 | | NPS MOD issued Pending Change Order |
| | | | | | | | 2,140.00 | $ 4,287.00 | | Pending Change Order |
| | | Load and haul and Temp Connect Service to Pump #84 | | | | | 2,245.00 | 1,788.00 | $ 1,788.00 | | Pending Change Order |
| | | | | | | | 611.00 | 918.00 | $ 818.00 | | Pending Change Order |
| | | Crane to remove sidewalk | | | | | | 120,808.25 | $ 120,808.00 | | GW Letter Approved |
| | Cherry Chest | | | | | | | 2,007.00 | $ 3,192.00 | | Pending Change Order |
| 531.62 | | Removal of Cold Concrete Romwlab and Fifs with Cold G | | | | | 72,715.90 | 88,688.90 | $ 89,588.90 | | NPS MOD ISSUED - Pending CO |
| | | | | | | | 3,100.00 | 2,907.00 | $ 2,137.00 | | NPS MOD ISSUED - Pending CO |
| | | Overtime in May 2005 | | | | | 21,484.60 | 21,484.00 | $ 21,484.00 | | NPS MOD ISSUED - Pending CO |
| | Cherry Chest | Overtime in June 2003 | | | | | 19,581.00 | $ 19,581.00 | | NPS MOD ISSUED - Pending CO |
| | | Replace T pdewell powts @ RE ramp | | | | | 4,383.00 | 4,383.00 | $ 4,383.00 | | NPS MOD ISSUED - Pending CO |
| | Cherry Chest | | | | | | 42,887.00 | 42,887.00 | $ 42,887.00 | | NPS MOD ISSUED - Pending CO |
| | Cherry Chest | | | | | | 25,529.00 | 26,529.00 | $ 25,529.00 | | NPS MOD ISSUED - Pending CO |
| | | | | | | | 19,479.00 | 13,588.00 | $ 13,588.00 | | |
| | Cherry Chest | Preliminary Planting and Grading at Lodge | | | | | 86,382.08 | 86,382.00 | $ 85,382.08 | | NPS MOD ISSUED - Pending CO |
| | | | | | | $ 1,160,871.03 | $1,136,904.03 | | $1,319,957.00 | | |

# Exhibit E

# OBER | KALER
A Professional Corporation

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

Kelly M. Preteroti
kmpreteroti@ober.com
410-347-7308

Offices in
Maryland
Washington, D.C.
Virginia

September 21, 2007

Bassem Soueidan
Grunley-Walsh Joint Venture LLC
5010 Nicholson Lane, Suite 200
Rockville, MD 20852

St Paul Fire and Marine Insurance Company
14120 Newbrook Drive, Suite 160
Chantilly, VA 20151-2223

The Continental Insurance Company
6021 University Blvd., Suite 500
Ellicott City, MD 21043

RE: Subcontract Agreement Between Grunley-Walsh Joint Venture, LLC
and Cherry Hill Construction and Washington Monument Design and
Construction, Washington, D.C.
Job No.:      1443C3059980901
Contract No.: 03096CHER001
Payment Bond No.: 400SU1001/929310622

Dear Sirs:

This letter constitutes Cherry Hill's demand for payment of the outstanding balance due
and owing from Grunley-Walsh for work performed by Cherry Hill on the Washington
Monument project, located in Washington, D.C.

On March 4, 2004, Grunley-Walsh entered into a Subcontract Agreement with Cherry
Hill. Pursuant to that Agreement, Cherry Hill was to perform "site work/site
survey/concrete/Bollards/Add Alternate List" for a subcontract sum of $6,054,859.00. A copy of
the Subcontract Agreement is attached hereto as Exhibit A. Cherry Hill's scope of work has
been completed, and accepted by Grunley-Walsh.

During the course of the project, Grunley-Walsh issued the following six change orders
to Cherry Hill:

Change Order 001      Administrative error; zero value
Change Order 002      Various construction items: ($193,532.00)

OBER | KALER
A Professional Corporation

September 21, 2007
Page 2

| | |
|---|---|
| Change Order 003 | Various modifications: $185,041.00 |
| Change Order 004 | Administrative error; zero value |
| Change Order 005 | Various site conditions: $139,860.00 |
| Change Order 006 | Various site conditions: $249,616.00 |

The sum total of the change orders issued to Cherry Hill is $380,985.00. A copy of change order numbers 2, 3, 5 and 6 is attached hereto as Exhibit B.

In addition, during the course of the project Cherry Hill performed numerous items of changed work as directed by Grunley-Walsh. The value of the directed change orders is $1,219,257. A spread sheet listing the directed changes is attached hereto as Exhibit C.

In the aggregate, the six change orders issued by Grunley-Walsh, and the directed change orders performed by Cherry Hill, increase the contract value by $1,600,242, to a sum total of $7,655,101.

To date, Grunley-Walsh has remitted payments to Cherry Hill in the total amount of $6,304,003. Deducting that amount from the contract value of $7,655,101 results in an outstanding balance due and owing to Cherry Hill of $1,351,098. Despite repeated requests from Cherry Hill, and in breach of its obligations under the Subcontract Agreement, Grunley-Walsh has failed to remit the outstanding balance to Cherry Hill.

Cherry Hill hereby demands that Grunley-Walsh and/or its payment bond sureties, St Paul Fire and Marine Insurance Company and Continental Insurance Company, immediately remit payment to Cherry Hill in the amount of $1,351,098. A copy of the bond is attached hereto as Exhibit D. In the event payment is not promptly received by Cherry Hill, Cherry Hill reserves the right to take any and all actions afforded to it under the contract, the bond, and at law.

Sincerely

Jay Bernstein

JB:jh

cc:     Brian Quinlan
        Jerzy Myckow
        Cleo Kimbembe

1936527.v1



7002 0860 0006 5756 5694



**MARYLAND**

INSURANCE
ADMINISTRATION

525 St. Paul Place   Baltimore, MD 21202-2272
www.mdinsurance.state.md.us



ST. PAUL FIRE AND MARINE INSURANCE COMPANY
CSC-LAWYERS INCORPORATING SERVICE COMPANY
7 ST. PAUL STREET, SUITE 1660
BALTIMORE, MD 21202

Dec. 7. 2007 2:13PM

No. 0202  P. 45



Surety Claims - 41st Floor      333 S Wabash Avenue      Chicago IL 60604      **James S. Milos**
Surety Claims Counsel

Telephone    312-822-2767
Facsimile     312-755-7276
Internet       James.Milos@cnasurety.com

December 10, 2007

## VIA ELECTRONIC MAIL TO (301) 881-6387

Mr. Bassem Soueidan
Grunley-Walsh Joint Venture, LLC
15020 Shady Grove Road
Rockville, MD 20850

| | |
|---|---|
| Principal: | Grunley-Walsh Joint Venture, LLC |
| Co-Sureties: | Continental Insurance Company and St. Paul Fire & Marine Insurance Company |
| Obligee: | United States of America, National Parks Service |
| Bond No.: | 929310622 and 400SU1001 |
| Project: | Contract No. 1443CX305998901, Task Order 35, Washington Monument, Upgrade Security and Grounds, package No. NACC 042400 |
| Claim No.: | 96127696 |

### RE: Cherry Hill Construction, Inc. v. Grunley-Walsh Joint Venture, LLC, St. Paul Fire & Marine Insurance Company and Continental Insurance Company  Case Number 289241-V, In The Circuit Court of Maryland For Montgomery County

Dear Mr. Soueidan:

The undersigned is an authorized surety claims representative of Continental Insurance Company, the lead surety as well as one of the sureties that issued the above referenced Performance and Payment Bonds on behalf of Grunley-Walsh Joint Venture, LLC. As a result of issuance, the Cherry Hill Construction, Inc. has filed suit naming Continental Insurance Company and St. Paul Fire & Marine Insurance Company as party defendants and seeking judgment against Continental Insurance Company and St. Paul Fire & Marine Insurance Company in the sum of $1,351,098.00.

In order to induce Continental Insurance Company to execute the referenced bonds, Grunley-Walsh Joint Venture, LLC executed a General Agreement of Indemnity that, among other things, obligates it to indemnify and save Continental Insurance Company and St. Paul Fire & Marine Insurance Company harmless from any and all loss, cost, and expense, including but not limited to attorneys fees that Continental Insurance Company and/or St. Paul Fire & Marine Insurance Company may incur as a result of the execution of the bond.

Please be advised that Continental Insurance Company and St. Paul Fire & Marine Insurance Company hereby tender their defense of this lawsuit to Grunley-Walsh Joint Venture, LLC, in

**CNA** SURETY                              -2-                    December 10, 2007

conjunction with counsel who is retained by Grunley-Walsh Joint Venture, LLC on Grunley-Walsh Joint Venture, LLC's behalf, on the following terms and conditions:

1.  Your counsel will enter an appearance on behalf of Continental Insurance Company and St. Paul Fire & Marine Insurance Company and will serve as Continental Insurance Company and St. Paul Fire & Marine Insurance Company's counsel. In tendering its defense, Continental Insurance Company and St. Paul Fire & Marine Insurance Company will rely upon your counsel's professional opinion that Continental Insurance Company and St. Paul Fire & Marine Insurance Company have a meritorious defense to the claim. Prior to filing any Answer on behalf of Continental Insurance Company and St. Paul Fire & Marine Insurance Company, you will provide me with a proposed copy for my review. One affirmative defense that must be raised is that the liability, if any, of Continental Insurance Company and St. Paul Fire & Marine Insurance Company are limited by the penal sum of the bond.

2.  Grunley-Walsh Joint Venture, LLC will indemnify and save Continental Insurance Company and St. Paul Fire & Marine Insurance Company harmless from any loss, cost or expense Continental Insurance Company and/or St. Paul Fire & Marine Insurance Company may incur as a result of the referenced lawsuit. Continental Insurance Company and St. Paul Fire & Marine Insurance Company reserve the right to revoke this tender should it, in its sole discretion, decide it is in its best interest to do so.

3.  Commencing 30 days from the date of this letter and every three months thereafter until such time as this matter is concluded, counsel will send status reports to the undersigned. In addition to the normal 90-day status reports, counsel will provide prompt status reports to the undersigned if any significant developments occur.

4.  Counsel will send copies of all pleadings to the undersigned and provide, at our request, access to all other matters that relate to Continental Insurance Company and St. Paul Fire & Marine Insurance Company's defense. Counsel will provide us with a copy of the Answer or other responsive pleading filed on behalf of Continental Insurance Company and St. Paul Fire & Marine Insurance Company. All discovery responses on behalf of Continental Insurance Company and St. Paul Fire & Marine Insurance Company should be submitted to the undersigned for review and approval in advance of filing or service. When this matter is resolved, we will require a file-stamped copy of the dispositive document.

5.  If facts come to counsel's attention during your representation of Continental Insurance Company and St. Paul Fire & Marine Insurance Company that counsel believes, in the exercise of their professional opinion, may give rise to a conflict of interest, counsel will immediately advise the undersigned of these facts and provide Continental Insurance Company and St. Paul Fire & Marine Insurance Company an opportunity to determine whether it wishes to select other counsel to represent it.



6. In the event the Complaint is modified to seek additional and/or extra-contractual damages from Continental Insurance Company or St. Paul Fire & Marine Insurance Company, counsel will give Continental Insurance Company and St. Paul Fire & Marine Insurance Company notice of this development within five business days.

7. Counsel will look solely to Grunley-Walsh Joint Venture, LLC for payment of counsel's fees and expenses and will acknowledge that counsel and counsel's firm have no claim against Continental Insurance Company and St. Paul Fire & Marine Insurance Company, their agents, officers or employees for reimbursement of counsel's or firm's expenses.

If these terms are acceptable, please have this agreement executed and returned to me via fax and regular mail. If you disagree with any of the terms and conditions set forth herein, please contact me immediately.

Should you have any questions regarding this letter please call me at 312-822-2767.

Sincerely,

James S. Milos
Authorized Representative of
Continental Insurance Company

cc:    St. Paul Fire & Marine Insurance Company (Via Electronic Mail)
       Mr. Roger C. Jones of Huddles Jones Sorteberg & Dachille, PC (Via Electronic Mail)

Enclosure: Complaint filed by Cherry Hill Construction, Inc.

Agreed and Accepted:

Grunley-Walsh Joint Venture, LLC

By: Mr. Bassem Soueidan

**AW 07 CV 3476**

Circuit Court for ___Montgomery County___
_____
City or County

## CIVIL–NON-DOMESTIC CASE INFORMATION REPORT

**Directions:**

_Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a). A copy must be included for each defendant to be served._

_Defendant: You must file an Information Report as required by Rule 2-323(h)._

THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.

| | |
|---|---|
| FORM FILED BY: ☒ PLAINTIFF ☐ DEFENDANT | CASE NUMBER: _____ |
| CASE NAME: Cherry Hill Construction, Inc. | v Grunley-Walsh Joint Venture, et al. |

JURY DEMAND: ☐ Yes ☒ No    Anticipated length of trial: _____ hours or _3_ days
RELATED CASE PENDING?    ☐ Yes ☒ No    If yes, Case #(s), if known: _____

Special Requirements? ☐    Interpreter/communication impairment    Which language _____
(Attach Form 1-332 if Accommodation or Interpreter Needed)    Which dialect _____
☐    ADA accommodation: _____

### NATURE OF ACTION
(CHECK ONE BOX)

### DAMAGES/RELIEF

**TORTS**
- ☐ Motor Tort
- ☐ Premises Liability
- ☐ Assault & Battery
- ☐ Product Liability
- ☐ Professional Malpractice
- ☐ Wrongful Death
- ☐ Business & Commercial
- ☐ Libel & Slander
- ☐ False Arrest/Imprisonment
- ☐ Nuisance
- ☐ Toxic Torts
- ☐ Fraud
- ☐ Malicious Prosecution
- ☐ Lead Paint
- ☐ Asbestos
- ☐ Other

**LABOR**
- ☐ Workers' Comp.
- ☐ Wrongful Discharge
- ☐ EEO
- ☐ Other

**CONTRACTS**
- ☐ Insurance
- ☐ Confessed Judgment
- ☒ Other construction dispute

**REAL PROPERTY**
- ☐ Judicial Sale
- ☐ Condemnation
- ☐ Landlord Tenant
- ☐ Other

**OTHER**
- ☐ Civil Rights
- ☐ Environmental
- ☐ ADA
- ☐ Other

**A. TORTS**
Actual Damages
- ☐ Under $7,500
- ☐ $7,500 - $50,000
- ☐ $50,000 - $100,000
- ☐ Over $100,000
- ☐ Medical Bills $_____
- ☐ Property Damages $_____
- ☐ Wage Loss $_____

**B. CONTRACTS**
- ☐ Under $10,000
- ☐ $10,000 - $20,000
- ☒ Over $20,000

**C. NONMONETARY**
- ☐ Declaratory Judgment
- ☐ Injunction
- ☐ Other _____

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
| | | | |
|---|---|---|---|
| A. Mediation | ☒ Yes ☐ No | C. Settlement Conference | ☒ Yes ☐ No |
| B. Arbitration | ☐ Yes ☒ No | D. Neutral Evaluation | ☐ Yes ☒ No |

### TRACK REQUEST

With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL. THIS CASE WILL THEN BE TRACKED ACCORDINGLY.
- ☐ ½ day of trial or less
- ☐ 1 day of trial time
- ☐ 2 days of trial time
- ☒ 3 days of trial time
- ☐ More than 3 days of trial time

PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY.

Date 11/26/07    Signature _Jay Bent_

Effective January 1, 2003    Page 1 of 2

# BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-205 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐
**Expedited**
Trial within 7 months of
Defendant's response

☐
**Standard**
Trial - 18 months of
Defendant's response

☐ EMERGENCY RELIEF REQUESTED _____

| Signature | Date |
|---|---|

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

## CIRCUIT COURT FOR BALTIMORE CITY (check only one)

☐ Expedited — Trial 60 to 120 days from notice. Non-jury matters.

☐ Standard-Short — Trial seven months from Defendant's response. Includes torts with actual damages up to $7,500; contract claims up to $20,000; condemnations; injunctions and declaratory judgments.

☐ Standard-Medium — Trial 12 months from Defendant's response. Includes torts with actual damages over $7,500 and under $50,000, and contract claims over $20,000.

☐ Standard-Complex — Trial 18 months from Defendant's response. Includes complex cases requiring prolonged discovery with actual damages in excess of $50,000.

☐ Lead Paint — Fill in: Birthdate of youngest plaintiff _____

☐ Asbestos — Events and deadlines set by individual judge.

☐ Protracted Cases — Complex cases designated by the Administrative Judge.

## CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

To assist the Court in determining the appropriate Track for this case, check one of the boxes below. This information is **not** an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.
☐ Liability is not conceded, but is not seriously in dispute.
☐ Liability is seriously in dispute.

## CIRCUIT COURT FOR BALTIMORE COUNTY

☐ Expedited
(Trial Date-90 days) — Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus.

☐ Standard
(Trial Date-240 days) — Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, Intentional Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases.

☐ Extended Standard
(Trial Date-345 days) — Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency.

☐ Complex
(Trial Date-450 days) — Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases.

Effective January 1, 2003                    Page 2 of 2

AW 07 CV 3476

Circuit Court for _____
                                    City or County

## CIVIL—NON-DOMESTIC CASE INFORMATION REPORT

**Directions:**

    *Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a). A copy must be included for each defendant to be served.*

    *Defendant: You must file an Information Report as required by Rule 2-323(h).*

    **THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.**

FORM FILED BY: ☐ PLAINTIFF  ☐ DEFENDANT          CASE NUMBER: 289241-V
                                                                            (Clerk to insert)
CASE NAME: _____ v _____
                        Plaintiff                              Defendant

JURY DEMAND: ☐ Yes ☐ No          Anticipated length of trial: _____ hours or _____ days
RELATED CASE PENDING? ☐ Yes ☐ No   If yes, Case #(s), if known: _____

Special Requirements? ☐   Interpreter/communication impairment   Which language _____
(Attach Form 1-332 if Accommodation or Interpreter Needed)       Which dialect _____
            ☐   ADA accommodation: _____

| NATURE OF ACTION (CHECK ONE BOX) | | DAMAGES/RELIEF | |
|---|---|---|---|
| **TORTS** | **LABOR** | **A. TORTS** | |
| ☐ Motor Tort | ☐ Workers' Comp. | **Actual Damages** | |
| ☐ Premises Liability | ☐ Wrongful Discharge | ☐ Under $7,500 | ☐ Medical Bills |
| ☐ Assault & Battery | ☐ EEO | ☐ $7,500 - $50,000 | $_____ |
| ☐ Product Liability | ☐ Other | ☐ $50,000 - $100,000 | ☐ Property Damages |
| ☐ Professional Malpractice | **CONTRACTS** | ☐ Over $100,000 | $_____ |
| ☐ Wrongful Death | ☐ Insurance | | ☐ Wage Loss |
| ☐ Business & Commercial | ☐ Confessed Judgment | | $_____ |
| ☐ Libel & Slander | ☐ Other | | |
| ☐ False Arrest/Imprisonment | **REAL PROPERTY** | | |
| ☐ Nuisance | ☐ Judicial Sale | **B. CONTRACTS** | **C. NONMONETARY** |
| ☐ Toxic Torts | ☐ Condemnation | | |
| ☐ Fraud | ☐ Landlord Tenant | ☐ Under $10,000 | ☐ Declaratory Judgment |
| ☐ Malicious Prosecution | ☐ Other | ☐ $10,000 - $20,000 | ☐ Injunction |
| ☐ Lead Paint | **OTHER** | ☐ Over $20,000 | ☐ Other _____ |
| ☐ Asbestos | ☐ Civil Rights | | |
| ☐ Other | ☐ Environmental | | |
| _____ | ☐ ADA | | |
| | ☐ Other _____ | | |

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION**

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
  A. Mediation      ☐ Yes ☐ No       C. Settlement Conference   ☐ Yes ☐ No
  B. Arbitration    ☐ Yes ☐ No       D. Neutral Evaluation      ☐ Yes ☐ No

**TRACK REQUEST**

With the exception of Baltimore County and Baltimore City, please fill in the estimated *LENGTH OF TRIAL. THIS CASE WILL THEN BE TRACKED ACCORDINGLY.*

  ☐ ½ day of trial or less          ☐ 3 days of trial time
  ☐ 1 day of trial time             ☐ More than 3 days of trial time
  ☐ 2 days of trial time

PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY.

Date _____  Signature _____

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-205 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐
**Expedited**
Trial within 7 months of
Defendant's response

☐
**Standard**
Trial - 18 months of
Defendant's response

☐ EMERGENCY RELIEF REQUESTED _____

| | |
|---|---|
| *Signature* | *Date* |

IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY PLEASE FILL OUT THE APPROPRIATE BOX BELOW.

### CIRCUIT COURT FOR BALTIMORE CITY (check only one)

☐ Expedited    Trial 60 to 120 days from notice. Non-jury matters.

☐ Standard-Short    Trial seven months from Defendant's response. Includes torts with actual damages up to $7,500; contract claims up to $20,000; condemnations; injunctions and declaratory judgments.

☐ Standard-Medium  Trial 12 months from Defendant's response. Includes torts with actual damages over $7,500 and under $50,000, and contract claims over $20,000.

☐ Standard-Complex  Trial 18 months from Defendant's response. Includes complex cases requiring prolonged discovery with actual damages in excess of $50,000.

☐ Lead Paint    Fill in: Birthdate of youngest plaintiff _____.

☐ Asbestos    Events and deadlines set by individual judge.

☐ Protracted Cases  Complex cases designated by the Administrative Judge.

### CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

To assist the Court in determining the appropriate Track for this case, check one of the boxes below. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.
☐ Liability is not conceded, but is not seriously in dispute.
☐ Liability is seriously in dispute.

### CIRCUIT COURT FOR BALTIMORE COUNTY

☐ Expedited
(Trial Date-90 days)    Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus.

☐ Standard
(Trial Date-240 days)   Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, Intentional Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases.

☐ Extended Standard
(Trial Date-345 days)   Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency.

☐ Complex
(Trial Date-450 days)   Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases.

Effective January 1, 2003    Page 2 of 2